IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHIRLEY MAE BROWN, | ) | |
|     Plaintiff | ) | |
| | ) | |
|       v. | ) | 2: 12-cv-1587 |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
|     Defendant. | ) | |

MEMORANDUM and ORDER

Mitchell, M.J.:

Presently before the Court for disposition are cross motions for summary judgment.   For

the reasons set forth below, the plaintiff's Motion for Summary Judgment (ECF 13) will be

denied; the defendant's Motion for Summary Judgment (ECF 15) will be granted, and the

decision of the Commissioner will be affirmed.

On November 5, 2012, Shirley Mae Brown by her counsel, filed a complaint pursuant to

Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§405(g) and

1383(c)(3) for review of the Commissioner's final determination disallowing her claim for a

period of disability or for disability insurance benefits and supplemental security income benefits

under Sections 216(i) and 223 of the Social Security Act, as amended, 42 U.S.C. §§416(i) and

423 and 1381 *cf*.

The plaintiff filed an application for disability and supplemental security income benefits

on June 20, 2009 (R.151-160). Benefits were denied on September 9, 2009 (R77-81).  On

September 25, 2009 , the plaintiff requested a hearing (R.87-88), and pursuant to that request a

hearing was conducted on January 25, 2011 and May 5, 2011 (R.49-55, 662-709).  In a decision

filed on May 17, 2011, an Administrative Law Judge denied benefits (R.19-36). The plaintiff

requested reconsideration of this determination, and upon reconsideration, and in a decision

dated September 5, 2012, the Appeals Council affirmed the prior decision (R.1-3). The instant

complaint was filed on November 5, 2012.

In reviewing an administrative determination of the Commissioner, the question before

any court is whether there is substantial evidence in the agency record to support the findings of

the Commissioner that the plaintiff failed to sustain his/her burden of demonstrating that he/she

was disabled within the meaning of the Social Security Act.

It is provided in 42 U.S.C. Section 405(g) that:

The court shall have power to enter, upon the pleadings and transcript of the
record, a judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the cause for a
rehearing.  The findings of the Commissioner of Social Security as to any fact, if
supported by substantial evidence, shall be conclusive....

Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion, Johnson v. Comm'r., 529 F.3d

198, 200 (3d Cir. 2008) and the court may not set aside a decision supported by substantial

evidence. Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)

Presently before the Court for resolution is a determination of whether or not there is

substantial evidence to support the findings of the Commissioner that the plaintiff is not disabled

within the meaning of the Act.

At the hearing held on January 25, 2011 and continued to May 5, 2011 (R.49-55, 662-709), the plaintiff appeared with counsel (R. 664), and testified that she was born on July 2, 1964 (R.666); that she has a twelfth grade education but was a slow learner (R.671) and that her last full time job was in 2006 when she worked as a cook (R.671).

In addition the plaintiff testified that she was going to have  total hip replacement (R.673); that she had some back nerves severed to eliminate pain (R.673); that she experiences chronic low back pain (R.674); that she can stand or sit for about a half hour and walk about four blocks (R.674-675); that she previously attended physical therapy (R.675); that she takes medication for back pain (R.676-677); that she also suffers from carpal tunnel syndrome (R.678); that she has asthma for which she takes medication (R.679-680); that she is being treated for a bipolar disorder, is depressed all the time and takes medication for this condition (R.682-685); that she goes grocery shopping but does not perform any housework (R.686-687); that she  smoked marijuana in the past (R.688); that she takes medication for migraines (R.689); that she also experiences knee pain (R.690), and that she experiences sleepiness from her medication (R.692).

At the hearing, a vocational expert was called upon to testify (R.693-709). The witness described the plaintiff's former employ as unskilled to semi-skilled in nature with a medium to high exertional level (R.694). When asked to assume an individual of the plaintiff's age, education and prior work experience who was restricted to light exertional level activity and who experiences anxiety, the witness responded that the individual could not perform plaintiff's prior work (R.695-696). However, she also testified that such an individual would be capable of engaging in a wide range of other gainful work activity (R.696-697).  Additionally, the witness

3

testified that if the individual had to be off-task more than fifteen percent of the time or was unable to maintain regular attendance, she would not be employable (R.698).

The issue before the Court is whether or not the decision of the Commissioner is supported by substantial evidence.

The term "disability" is defined in 42 U.S.C. Section 423(d)(1)(A) as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

For purposes of the foregoing, the requirements for a disability determination are provided in 42 U.S.C. Section 423(d)(2)(A):

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. Section 423(d)(3).  These provisions are also applied for purposes of establishing a period of disability.  42 U.S.C. Section 416(i)(2)(A).

It is provided in 42 U.S.C. Section 1382c(a)(3) that:

> (A)... an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason

4

of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence ... "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

* * *

(D) For purposes of this paragraph, a physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

It is also provided that:

Notwithstanding the provisions of subparagraphs (A) through (E), an individual shall also be considered to be disabled for purposes of this subchapter if he is permanently and totally disabled as defined under a State plan approved under subchapter XIV or XVI of this chapter as in effect for October 1972 and received aid under such plan (on the basis of disability) for December 1973 (and for at least one month prior to July 1973), so long as he is continuously disabled as so defined.

42 U.S.C. Section 1382c(3)(F).

Pursuant to the authorization contained in 42 U.S.C. Section 1382c(3)(D), the Commissioner has promulgated certain regulations for the implementation of the Supplemental Security Income Program.  While these statutory provisions have been regarded as "very harsh," nevertheless, they must be followed by the courts.  NLRB v. Staiman Brothers, 466 F.2d 564 (3d Cir. 1972); Choratch v. Finch, 438 F.2d 342 (3d Cir. 1971); Woods v. Finch, 428 F.2d 469 (3d

Cir. 1970).  Thus, it must be determined whether or not there is substantial evidence in the record to support the conclusion of the Commissioner that the plaintiff is not disabled within the meaning of the Social Security Act.

For this purpose, certain medical evidence was reviewed by the Commissioner.

On July 28, 2008, it was reported that the plaintiff was in a drug and alcohol treatment program (R.258).

In a report of an examination conducted on September 18, 2008, Dr. Abdul Khan noted a history of mental health problems without psychotic symptoms, stable asthma and chronic low back pain. Marijuana use was also noted. It was concluded that there were no limitations on plaintiff's lifting, standing, walking or sitting ability (R.260-270).

In a report of a clinical psychological evaluation conducted on September 23, 2008, Dr. Diane Fox diagnosed a recurrent major depression, generalized anxiety disorder, intermittent explosive disorder, marijuana abuse, asthma, carpal tunnel syndrome and chronic back pain. It was concluded that "with comprehensive mental health and medical care, Ms. Brown's prognosis is guardedly optimistic."  Dr. Fox also observed that the plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, and stand, walk or sit for about six hours (R.271-283).

In a  mental health residual functional capacity assessment completed on October 14, 2008, it is noted that except for the marked limitations on the plaintiff's ability to comprehend and carry out detailed instructions, her mental limitations were either not significant to moderate in nature. It was concluded that she was capable of performing simple, repetitive work (R.284-301).

6

A left knee x-ray taken on February 3, 2009 revealed mild patellofemoral degenerative spurring (R.302).

The plaintiff was treated at the West Penn Hospital emergency room between January 9, 2009 and May 5, 2009 for hip pain and a toe injury (R.355-362).

The plaintiff was treated at the West Penn Medical Associates between July 31, 2008 and May 14, 2009 for left knee pain, moderate left hip osteoarthritis and mild degenerative disc disease (R.310-326).

In a residual functional capacity evaluation completed on August 31, 2009, it is noted that the plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk or sit for about six hours. It was also determined that the plaintiff was only partially credible (R.363-369).

Vocational assessments completed on October 1, 2008 and September 4, 2009 concluded that the plaintiff was capable of engaging in unskilled work at the medium exertional level (R.61,64).

In a residual mental capacity assessment completed on September 4, 2009, Edward Zuckermann, Ph.D. concludes that the plaintiff was only partially credible and that she was capable of engaging in competitive work. It is also noted that the plaintiff had a bipolar and substance abuse disorder. Any limitations were said to be mild to moderate (R.370-386).

The plaintiff was treated at the West Penn Hospital emergency room between February 3, 2009 and November 6, 2009 for a lipoma on her upper back which was excised, a cough, left back pain, right wrist pain and left knee pain (R.387-421).

In a report of a neurological evaluation conducted on October 5, 2010, Dr. Jon Brillman recommended and commenced treatment for migraines (R.618-620).

The plaintiff was treated at West Penn Hospital between September 29, 2009 and November 30, 2010 for a cough, knee pain, edema, pelvic pain and a lipoma (R.480-597).

In a report covering low back pain treatment provided between December 7, 2010 and January 27, 2011, Todd Pepper, D.O. reported the use of medication and physical therapy. Lumbar facet blocks were also provided (R.470-478).

The plaintiff was treated at the Milestone Centers, Inc. between May 20, 2009 and February 16, 2011 for a bipolar disorder and depression, substance abuse, ADHD and a panic disorder. Therapy and medication were prescribed (R.327-354, 423-468, 549-597).

In a report covering treatment on April 6, 2011, Dr. Ahmen Jahangeer diagnosed depression (R.613-617).

The plaintiff was treated by Dr. Robert Liss between October 23, 2008 and February 24, 2011 for hip and hand osteoarthritis and patellofemoral pain. Significant osteophyte formation about the femoral head neck was noted (R.303-309, 598-612).

The plaintiff had a total left hip arthroplasty performed on May 12, 2011 (R.623-629).

The plaintiff's orthopod treated her between March 17, 2011 and July 5, 2011 and reported a carpel tunnel decompression and total left hip replacement (R.632-636).

The plaintiff was treated at the Institute for Pain Medication between December 7, 2010 and July 29, 2011 for lower back and left hip pain (R.638-661).

In orthopedic reports for the period from October 6, 2011 through March 6, 2012 diagnoses of stable left hip arthroplasty, mild osteoarthritis of the right hip, mild gout, recurrent

bilateral carpal tunnel syndrome, possible hand neuropathy, and bilateral patellofemoral pain were noted (R.42-48).

The relevant regulations require explicit findings concerning the various vocational factors which the Act requires to be considered in making findings of disability in some cases. These regulations, published at 20 C.F.R. §§404.1501, *et seq*., set forth an orderly and logical sequential process for evaluating all disability claims.  In this sequence, the Administrative Law Judge must first decide whether the plaintiff is engaging in substantial gainful activity.  If not, then the severity of the plaintiff's impairment must be considered.  If the impairment is severe, then it must be determined whether he/she meets or equals the "Listings of Impairments" in Appendix 1 of the Regulations which the Commissioner has deemed of sufficient severity to establish disability.  If the impairment does not meet or equal the Listings, then it must be ascertained whether he/she can do his/her past relevant work.  If not, then the residual functional capacity of the plaintiff must be ascertained, considering all the medical evidence in the file.  The finding of residual functional capacity is the key to the remainder of findings under the new regulations.  If the plaintiff's impairment is exertional only, (i.e. one which limits the strength he/she can exert in engaging in work activity), and if his/her impairment enables him/her to do sustained work of a sedentary, light or medium nature, and the findings of age, education and work experience, made by the Administrative Law Judge coincide precisely with one of the rules set forth in Appendix 2 to the regulations, an appropriate finding is made.  If the facts of the specific case do not coincide with the parameters of one of the rules, or if the plaintiff has mixed exertional and non-exertional impairments, then the rules in Appendix 2 are used as guidelines in

assisting the Administrative Law Judge to properly weigh all relevant medical and vocational

facts.

Based on the evidence presented, the Commissioner concluded:

The claimant meets the insured status requirements of the Social Security Act
through June 30, 2012.

The claimant has not engaged in substantial gainful activity since March 1, 2007,
the alleged onset date…

The claimant has the following severe impairments: lumbar facet arthropathy,
degenerative joint disease in the left hip, bilateral carpal tunnel syndrome, asthma,
migraines, bipolar disorder, attention deficit hyperactivity disorder, and cannabis
abuse…

The claimant does not have an impairment or combination of impairments that
meets or medically equals some of the listed impairments…

The claimant's mental impairments, considered singly and in combination, do not
meet or medically equal the criteria of listing…. To satisfy the "paragraph B"
criteria, the mental impairments must result in at least two of the following:
marked restriction of activities of daily living, marked difficulties in maintaining
social functioning, marked difficulties in maintaining concentration, persistence,
or pace; or repeated episodes of decompensation, each of extended duration….

In activities of daily living, the claimant has <u>mild</u> restriction ….

In social functioning, the claimant has <u>moderate</u> difficulties…. The consultative
examiner found that the claimant would interact well with authority figures in
work situations, but might "lash out randomly" at strangers. The consultative
examiner assessed a "mixed" ability to interact with co-workers, peers, and the
public due to impulse control problems… The claimant's treating psychiatrist
found that she had a "limited but satisfactory" ability to maintain socially
appropriate behavior; interact appropriately with the general public; accept
instructions and respond appropriately to criticism from supervisors and get along
with co-workers or peers without unduly distracting them or exhibiting behavioral
extremes….

With regard to concentration, persistence or pace, the claimant has <u>moderate</u>
difficulties…. Despite these limitations, however, she testified that she was able
to use her iPad, to play chess and checkers and listen to audio books…. The
consultative examiner found that the claimant had a "limited" ability to carry out

instructions, perform activities within a schedule, sustain a routine, make decisions, perform at a consistent pace, adapt to change, perform within deadlines and schedules, respond to conflict, make decisions, and maintain regular attendance….  The treating psychiatrist assessed average intellectual ability and average short-term memory, but found some difficulty with long-term recall. The treating psychiatrist also found that the claimant had a "limited but satisfactory" ability to make simple work-related decisions, and an "unlimited or very good" ability to: understand, remember, and carry out short, simple instructions; sustain an ordinary routine without special supervision; and ask simple questions or request assistance.  Therefore, I find that the evidence supports a finding [that] claimant has moderate limitations in concentration, persistence, or pace. Finally the claimant has experienced <u>no</u> episodes of decompensation, which have been of extended duration….

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined ….

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the … residual functional capacity assessment….

I am unable to find the claimant's allegations fully credible. For instance, she has provided inconsistent information regarding daily activities….

Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform ….

The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2007, through the date of this decision [May 17, 2011]. (R.24-36).

The record demonstrates that the plaintiff suffers from a variety of physical and mental impairments, however, the record also demonstrates that there is some discrepancy between her recitation of the effects of those symptoms on her ability to work and the medical justification for those effects. Rather, the matter here appears to be one of credibility resolution which rests within the scope of the authority of the Commissioner. <u>Diaz v. Comm'r</u>, 577 F.3d 500, 506 (3d

Cir. 2009). In the instant case, the latter concluded that the plaintiff's allegations were exaggerated based on the medical evidence of record and there appears to be ample support for this determination.

Summary judgment is appropriate where there are no material issues of fact in dispute and the movant is entitled to judgment as a matter of law. Lichtenstein v. UPMC, 691 F.3d 294, 300 (3d Cir. 2012). In the instant case, there are no material factual issues in dispute, the decision of the Commissioner is supported by substantial evidence, and judgment will be entered for the defendant and against the plaintiff and the decision of the Commissioner will be affirmed.

An appropriate Order will be entered.

ORDER

AND NOW, this 25th day of June, 2013, for the reasons set forth in the foregoing

Memorandum, the plaintiff's Motion for Summary Judgment (ECF 13) is DENIED; the

defendant's Motion for Summary Judgment (ECF 15) is GRANTED, and the decision of the

Commissioner is AFFIRMED.


                                        s/ Robert C. Mitchell
                                        United States Magistrate Judge